**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**SHELTER GENERAL INSURANCE
COMPANY,**

    **Plaintiff,**

v.

**ZURICH DIRECT f/k/a UNIVERSAL
UNDERWRITERS GROUP,
BRIAN HARNER and SHANA HARNER,**

    **Defendants.**                         Case No. 07-cv-507-DRH

**MEMORANDUM & ORDER**

**HERNDON, Chief Judge:**

### I. INTRODUCTION

Before the Court is defendant Zurich Direct f/k/a Universal Underwriters Group's ("Universal") Motion for Summary Judgment (Doc. 22). In Response, plaintiff Shelter General Insurance Company ("Shelter") opposes Universal's arguments and also makes a Cross-Motion for Summary Judgment (Docs. 24 & 26). Also pending before the Court are two separate Motions for Oral Argument on the above-referenced summary judgment motions, filed by Shelter and Universal, respectively (Docs. 25 & 33). Although requested by the Parties, the Court finds no need for oral argument in this case, as the facts and legal arguments have been sufficiently briefed, allowing for the Court to make its ruling herein without

additional advocacy from counsel.[1]  As such, the Court denies the Motions for Oral Argument (Docs. 25 & 33).  The issue presented before the Court is whether the Illinois "targeted tender" doctrine is applicable to the facts of this case in order to absolve Defendant of its duty to defend in the underlying suit.  As discussed herein, the Court finds it is not.

## II.  **BACKGROUND**

The uncontroverted facts reveal that on or about April 8, 2005, Larry Baggot ("Baggott") was involved in a motor vehicle accident ("the accident") with Shana Harner and Brian Harner.  Baggott was driving a 2004 Pontiac Grand Prix, owned by Kathy McLaughlin ("McLaughlin").  At the time, Baggott was an employee at Foley Sweitzer Motor Sales, Inc. ("Foley Sweitzer").  McLaughlin was a customer of Foley Sweitzer.  It is undisputed that while driving McLaughlin's automobile, Baggott was acting within the scope of his employment at Foley Sweitzer.

Following the accident, Shana Harner and her husband, Brian Harner, filed a personal injury suit against Baggot in the Circuit Court of Williamson County, Illinois (the "underlying suit").  Baggot was served with a copy of the Harners' complaint on or about April 16, 2006.  The Harners subsequently amended their complaint to add Foley Sweitzer as a defendant, as Baggott's employer.  Foley Sweitzer was served with the Harners' amended complaint on April 10, 2007.

---

[1] Both parties have filed Replies, which are not in accordance with the Court's Local Rule 7.1(d), requiring that reply briefs shall not exceed five (5) pages.  Because both reply briefs are in excess of five pages, rather than striking each (which the Court will not hesitate to do in future instances), the Court will only consider the first five pages of each reply brief.

McLaughlin's vehicle was insured by an automobile liability policy issued to her by Shelter. This policy was in effect at the time of the accident. Also at the time, Foley Sweitzer was insured under a garage operations and auto hazard policy, issued by Universal. Soon after Baggott was involved in the accident, he informed the Foley Sweitzer's business coordinator, Donna Samples. As was the standard procedure when a Foley Sweitzer employee was involved in an accident within the scope of his employment, she filled out the proper claim documentation to Universal. Samples stated during her deposition that on April 13, 2005, she received correspondence from Universal, indicating that they had received Foley Sweitzer's claim and assigned it a claim number. The claim was for potential reimbursement for fixing the minor damage caused to McLaughlin's automobile, driven by Baggott at the time of the accident.

Nearly a year later, in April 2006, Baggott was served with the Harners' complaint in the underlying suit. Baggott gave Samples a copy of the complaint. Samples testified that she then notified James Sweitzer, the General Manager of Foley Sweitzer and Universal, regarding the underlying suit. She also sent a copy of the complaint to Universal. Samples received Universal's faxed acknowledgment of the underlying suit, dated April 25, 2006. It is also undisputed that Shelter was notified about the underlying suit, as it involved McLaughlin's automobile. Shelter retained counsel to defend Baggott. When Foley Sweitzer was served with the Harners' amended complaint in April 2007, it, it forwarded a copy to Universal. Shelter also retained counsel to defend Foley Sweitzer in the underlying suit.

In July 2007, Shelter filed a declaratory judgment suit with this Court, on the basis of diversity jurisdiction. **28 U.S.C. § 1332**. According to Plaintiff's allegations, Universal has refused to defend Foley Sweitzer and Baggott in the underlying suit. Conversely, Universal argues that neither Foley Sweitzer nor Baggott ever made a demand upon Universal to defend in the underlying suit. In support. Universal submits a copy of a letter from Foley Sweitzer to Shelter, signed by both Baggott and James Sweitzer (as representative of Foley Sweitzer). The letter, hereinafter called the "Targeted Tender Letter," states, in pertinent part:

> Kathy McLaughlin owned the vehicle that Mr. Baggott was driving when he was involved in the accident. Ms. McLaughlin had a liability insurance policy from Shelter Insurance. Shelter has agreed to defend and indemnify (up to the policy limits, of course) the defendants in the Litigation.
>
> Mr. Baggott and Foley-Sweitzer Motors have notified Foley-Sweitzer Motors insurer of the Litigation and we have given them authority to delegate the defense in the Litigation to Shelter Insurance. We understand that they have done so and accept their decision to delegate the defense in the Litigation to Shelter Insurance. However Foley-Sweitzer Motors insurer will be responsible for any settlement or judgment in excess of Ms. McLaughlin's policy limits with Shelter Insurance as we are not waiving or giving up any of our rights as to indemnification in excess of Shelter Insurance's indemnification limits.

(Doc. 24, Ex. E.)

Universal claims this letter evidences Baggott and Foley Sweitzer's targeted tender of their defense to Shelter, as well as their decision not to seek defense under their insurance policy from Universal. Thus, Universal believes that it maintains no duty to defend either Baggott or Foley Sweitzer in the underlying suit

and should not be required to share in the defense costs with Shelter. Universal has moved for summary judgment based on this argument, as well as the argument that the issues in Shelter's declaratory judgment action are not yet ripe. Shelter, in response, moves for cross summary judgment, arguing that this matter is ripe for adjudication. Further, Shelter argues that the targeted tender was invalid and even if there were valid, it violates Illinois public policy.

### III. DISCUSSION

**A.  Legal Standard**

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Oats v. Discovery Zone*, **116 F.3d 1161, 1165 (7th Cir. 1997) (citing** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986))**. The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, **123 F.3d 456, 461 (7th Cir. 1997) (citing** *Celotex*, **477 U.S. at 323)**. In reviewing a summary judgment motion, this Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. *Celex Group, Inc. v. Executive Gallery, Inc.*, **877 F. Supp. 1114, 1124 (N.D. Ill. 1995)**. This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the nonmovant. *Regensburger v. China Adoption Consultants, Ltd.*, **138 F.3d 1201, 1205 (7th Cir. 1998)**

(citing ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)**).

In response to a motion for summary judgment, the nonmovant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. ***Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994),** *aff'd*, **51 F.3d 276 (citing *Celotex*, 477 U.S. at 324)**. No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." ***Anderson*, 477 U.S. at 249-50 (citations omitted);** *accord* ***Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996);** *Tolle v. Carroll Touch, Inc.*, **23 F.3d 174, 178 (7th Cir. 1994)**.

**B.  Analysis**

Universal's motion for summary judgment is based on two arguments: whether Shelter's action for declaratory judgment is yet ripe for adjudication and whether the targeted tender doctrine effectively serves to absolve Universal of its duty to defend in the underlying suit. Shelter's cross motion for summary judgment counters that this matter is ripe for adjudication, Universal's duty to defend was triggered when it received a copy of the underlying complaint, that the targeted tender to Shelter was not legitimate.

**1.  Ripeness**

Universal asserts that it is entitled to summary judgment because this

matter is not yet ripe for adjudication. Specifically, Universal states that an insurer's duty to indemnify its insured is only ripe if the insured has already incurred liability in the underlying suit. ***State Auto. Mut. Ins. Co. v. Habitat Const. Co.*, 875 N.E.2d 1159, 1169-70 (Ill. App. Ct. 2007) (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1221 (Ill. 1992))**. Here, Baggott and Foley Sweitzer have not yet incurred any liability in the underlying suit and thus, Universal argues that the issue of whether they should have to indemnify for any amount in excess of Shelter's coverage is not yet ripe for adjudication. In contrast, Shelter argues that this matter is ripe for adjudication, as the real issue presently before the Court is whether Universal has a duty to *defend* the insureds in the underlying suit. Here, Shelter states that Universal has refused to contribute to the defense of Baggott and Foley Sweitzer in the underlying suit.

"[T]he duty to defend is distinguishable from the duty to indemnify." ***State Auto. Mut. Ins. Co. v. Habitat Const. Co.*, 875 N.E.2d at 1169 (citation omitted)**. "The question of an insurance company's duty to defend plainly presents a present controversy ripe for declaratory relief." ***Sears, Roebuck & Co. v. Zurich Ins. Co.*, 422 F.2d 587, 589 (7th Cir. 1970) (citations omitted);** *see also* ***Weber v. St. Paul Fire & Marine Ins. Co.*, 622 N.E.2d 66**, **68 (Ill. App. Ct. 1993) (citation omitted)**. In this case, the issue of whether Universal has a duty to defend Baggott and Foley Sweitzer is certainly ripe for adjudication. However, the issue of whether there is also a duty to indemnify is not yet ripe, because the underlying suit

has not yet been resolved. Therefore, the Court will proceed to determine the next issue herein: whether Universal had a duty to defend once the insureds targeted tender of their defense in the underlying suit to Shelter.

### 2. Targeted Tender

Universal believes that Baggott and Foley Sweitzer clearly made a legitimate targeted tender of their defense in the underlying suit exclusively to Shelter and as such, Universal has no duty to defend. Shelter, in turn, believes the Targeted Tender Letter is disingenuous and violates Illinois public policy. Moreover, Shelter argues that Universal's duty to defend was triggered once it received a copy of the complaint filed in the underlying suit and that the Targeted Tender Letter cannot operate to "deselect" or dissolve this duty.

Actual notice of the underlying suit triggers an insurer's duty to defend its insured. **Cincinnati Cos. v. West American Ins. Co., 701 N.E.2d 499, 505 (Ill. 1998)**. Actual notice ultimately requires the insurer to "know both that a cause of action has been filed and that the complaint falls within or potentially within the scope of coverage of one of its policies." **Id.** However, Illinois law has created what is known as the "targeted tender" doctrine, allowing an insured covered by multiple concurrent policies to designate which of these insurers will provide defense coverage. **Id. at 503 (citing *Institute of London Underwriters v. Hartford Fire Ins. Co.*, 599 N.E.2d 1311, 1313 (Ill. App. Ct. 1992) and *Aetna Casualty & Surety Co. v. Chicago Ins. Co.*, 994 F.2d 1254, 1260 (7th Cir. 1993))**. In other

words, the insured may choose to "target" its tender of defense to only one insurer. Once the insured has made a targeted tender of the duty to defend to a particular insurer, that insurer cannot seek equitable contribution from the other applicable insurers who were not selected by the insured. *Id.*; *see also John Burns Construction Co. v. Indiana Ins. Co.*, 727 N.E.2d 211 (Ill. 2000). The rationale behind the "targeted tender" doctrine in Illinois is "to protect the insured's right to knowingly forgo an insurer's involvement." *Id.* **(acknowledging that an insured may opt not to seek its insurer's assistance in litigation for "fear that premiums would be increased, or the policy cancelled, in the future")**. Thus, when the insured has knowingly forgone an insurer's assistance, there is no existing duty to defend, even if previously triggered by actual notice of the claim. *Id.* **at 504 (citing *Towne Realty, Inc. v. Zurich Ins. Co.*, 548 N.W.2d 64, 67 & n.2 (Wis. Ct. App. 1996));** *see also Dearborn Ins. Co. v. Int'l Surplus Lines Ins. Co.*, 719 N.E.2d 1092, 1097 (Ill. App. Ct. 1999) ("Our supreme court has made it clear that an insured may knowingly forego the insurer's assistance and relieve the insurer of its obligations to defend by instructing the insurer not to involve itself in the litigation.")**.

Illinois courts have gone as far as allowing an insured to "deselect" or "deactivate" coverage with one insurance carrier previously selected for purposes of invoking exclusive coverage with another carrier. *Legion Ins. Co. v. Empire Fire and Marine Ins.*, 822 N.E.2d 1, 6 (Ill. App. Ct. 2004); *see also Alcan United,*

*Inc. v. West Bend Mut. Ins. Co.*, 707 N.E.2d 687, 695 (Ill. App. Ct. 1999) (noting that their holding was particularly applicable in situations where the insured was not aware of coverage by another insurer at the time the initial tender was made). However, the Illinois Supreme Court has declined to extend the targeted tender doctrine to allow "one insurer to vertically exhaust its primary and excess policy limits before all primary insurance available to the insured has been exhausted." *Kajima Construction Serv., Inc. v. St. Paul Fire and Marine Ins. Co.*, 879 N.E.2d 305, 314 (Ill. 2007) (explaining that allowing this "would eviscerate the distinction between primary and excess insurance"). In another instance, an Illinois appellate court has further restricted the "targeted tender" doctrine, refusing to allow a tow truck company to "deselect" its liability insurance and tender the litigation to the insurer for the delivery van it was towing at the time of the accident. *Pekin Ins. Co. v. Fidelity & Guaranty Ins. Co.*, 830 N.E.2d 10 (Ill. App. Ct. 2005). The *Pekin* court went as far as to hold that the "targeted tender" doctrine in Illinois was primarily limited to the context of construction contracts involving a named additional insured. *Id.* at 19.

The underlying suit in *Pekin* stems from an automobile incident where a delivery van, being towed, broke free from the tow truck, crossed into oncoming traffic and injured both the driver and passenger of the oncoming vehicle. *Id.* at 13. The towing company owned a liability insurance policy covering both the tow truck and its driver, issued by Pekin Insurance Company ("Pekin"). The delivery van

owner had an automobile liability insurance policy covering both the van and its driver, issued by Fidelity & Guaranty Insurance Company ("Fidelity"). *Id.* The injured parties filed a suit, naming as defendants both the delivery van driver, the delivery van owner, the tow truck driver and the towing company. *Id.* Several years later, the towing company and its driver "deselected" their coverage under the Pekin policy and targeted the litigation to Fidelity, solely. *Id*. Pekin, the insurer of the tow company and the tow truck driver, filed a declaratory judgment action against the insurer of the delivery van owner and driver, Fidelity, seeking a declaration that Fidelity owed Pekin a duty to defend the tow company and driver. Pekin also sought a declaration that it owed no duty to defend the delivery van owner and driver. *Id*.

The Fourth District appellate court found that Fidelity had a duty to defend the towing company and the tow truck driver under the omnibus clause in the delivery van owner's insurance policy; while towing the delivery van, the tow truck driver was considered a permissive user of the delivery van. *Id.* **at 14**. The court further found that the allegations in the underlying litigation potentially fell within the scope of coverage of both insurance policies in that (1) the Pekin policy potentially covered the delivery van owner and its driver and (2) the Fidelity policy potentially covered the towing company and the tow truck driver. *Id.* **at 18**. As such, the issue to determine next was which insurer provided primary coverage in the underlying litigation. *Id*.

First, ***Pekin*** noted that both policies contained "other insurance"

clauses, requiring that their own coverage should be considered "excess" in cases where their named insured does not own the vehicle being used. Second, it recognized the general principle that "[w]here two insurance policies each purport to offer only secondary coverage, the insurance of the vehicle's owner is primary while that of the driver is secondary." *Id*. **(citing *State Farm Mut. Auto. Ins. Co. v. Hertz Claim Mgt. Corp.*, 789 N.E.2d 407, 411 (Ill. App. Ct. 2003))**. Applying this general principle, then, would have made Fidelity the primary policy, as it insured the delivery van, which was the vehicle that caused the accident. Accordingly, the Pekin policy would have been secondary, as it insured the driver or permissive user of the delivery van. Yet, the court found that allowing Pekin to become the secondary coverage policy would be violate Illinois public policy as reflected in section 12-606(d) of the Illinois Vehicle Code,[2] which mandates liability insurance for tow trucks. *Id*. **(citing 625 ILL. COMP. STAT. 5/12-606(d))**. Explaining its rationale, the *Pekin* court stated:

> In light of the policy of mandatory insurance for tow trucks and the fact that Brown's towing business was engaged in the business of towing automobiles, a business based on the use of vehicles it does not own, we find Pekin is the primary insurer for the delivery van's

---

[2] Section 12-606(d) of the Illinois Vehicle Code states, in part:

(d) Every tow-truck operator shall in addition file an . . . insurance policy, or other proof of insurance in a form to be prescribed by the Secretary for: . . . truck (auto) liability insurance in an amount no less than a combined single limit of $500,000 . . . which shall indemnify or insure the tow-truck operator for the following:

  (1) Bodily injury or damage to the property of others.

  (2) Damage to any vehicle towed by the tower.

**625 ILL. COMP. STAT. 5/12-606(d)**.

use by Brown's towing business's driver and the delivery van driver. Therefore, Fidelity's coverage for the delivery van's use is secondary and excess over that of Pekin.

*Id.*

Considering the argument that Pekin had no duty to defend or indemnify anyone because the towing company and the tow truck driver had "deselected" coverage under this policy and "targeted" Fidelity, the court found that allowing such a "deselection" or "targeted tender" would further violate the public policy of Illinois. *Id.* **at 19**. Again, the ***Pekin*** court noted that in Illinois, tow trucks were statutorily required to maintain liability insurance "in order to protect the public from damage arising from the use of tow trucks." *Id*. **(citing 625 Ill. Comp. Stat. 5/12-606(d))**. Allowing the towing company and the tow truck driver to deselect coverage from their own policy and target tender the policy covering the vehicle being towed "would render the statute and its purpose virtually meaningless." *Id*. To support this holding, the ***Pekin*** court proceeded to distinguish the line of Illinois cases establishing the "targeted tender" doctrine, finding that application of this doctrine had been limited primarily to the context of construction contracts, where the parties had previously negotiated to be added as an additional named insured to the other's policy. *Id.* Accordingly, Pekin, as the issuer of the towing company's policy, remained the primary insurer because the towing company and the tow truck driver had no right to deselect coverage under their policy and target the delivery van owner's Fidelity policy. *Id*.

In this matter, neither party disputes that either the Shelter or Universal

policy potentially provides duty to defend coverage for the underlying suit. Here, Shelter relies primarily on *Pekin* to support its argument that Baggott and Foley Sweitzer cannot "deselect" their coverage under the Universal policy and tender their defense solely to Shelter, because it would violate section 5-101 of the Illinois Vehicle Code.³ Further, Shelter argues that Baggott and Foley Sweitzer's targeted tender was

---

³ Section 5-101 of the Illinois Vehicle Code (**625 ILL. COMP. STAT. 5/5-101)** states, in part:

> (b) An application for a new vehicle dealer's license shall be filed with the Secretary of State . . . and shall contain:
>
> 6. The policy must provide liability coverage in the minimum amounts of $100,000 for bodily injury to, or death of, any person, $300,000 for bodily injury to, or death of, two or more persons in any one accident, and $50,000 for damage to property.
>
> If the permitted user has a liability insurance policy that provides automobile liability Insurance coverage of at least $100,000 for bodily injury to or the death of any person, $300,000 for bodily injury to or the death of any 2 or more persons in any one accident, and $50,000 for damage to property, then the permitted user's insurer shall be the primary insurer and the dealer's insurer shall be the secondary insurer. If the permitted user does not have a liability insurance policy that provides automobile liability insurance coverage of at least $100,000 for bodily injury to or the death of any person, $300,000 for bodily injury to or the death of any 2 or more persons in any one accident, and $50,000 for damage to property, or does not have any insurance at all, then the dealer's insurer shall be the primary insurer and the permitted user's insurer shall be the secondary insurer.
>
> When a permitted user is "test driving" a new vehicle dealer's automobile, the new vehicle dealer's insurance shall be primary and the permitted user's insurance shall be secondary.
>
> [A] "permitted user" is a person who, with the permission of the new vehicle dealer or an employee of the new vehicle dealer, drives a vehicle owned and held for sale or lease by the new vehicle dealer which the person is considering to purchase or lease, in order to evaluate the performance, reliability, or condition of the vehicle. The term "permitted user" also includes a person who, with the permission of the new vehicle dealer, drives a vehicle owned or held for sale or lease by the new vehicle dealer for loaner purposes while the user's vehicle is being repaired or evaluated.
>
> "[T]est driving" occurs when a permitted user who, with the permission of the new vehicle dealer or an employee of the new vehicle dealer, drives a vehicle owned and held for sale or lease by a new vehicle dealer that the person is considering to purchase or lease, in order to evaluate the performance, reliability, or condition of the vehicle.
>
> "[L]oaner purposes" means when a person who, with the permission of the new vehicle dealer, drives a vehicle owned or held for sale or lease by the new vehicle dealer while the user's vehicle is being repaired or evaluated.

not legitimate. As held in ***Pekin***, Shelter argues that allowing Baggott and Foley Sweitzer to target another insurance policy would frustrate the statutory mandate requiring new automobile dealers to maintain liability insurance for bodily injury coverage in the minimum amount of 100/300.[4] Shelter further believes this matter to be factually akin to ***Pekin*** and thus distinguishable from the targeted tender line of cases in that it does not involve a construction contract where the deselecting or tendering party was an additional named insured. Instead, Shelter argues that the towing company and the tow truck driver's coverage under the Shelter policy is only as unnamed permissive users of the vehicle, rather than additional named insureds. In other words, Shelter argues that because there was no contract between the vehicle's owner and Baggott and Foley Sweitzer, requiring that they be added as additional named insureds to the Shelter policy, excepts this case from the targeted tender doctrine under the holding in ***Pekin***.

Contrary to Shelter's position, Universal argues that the Illinois targeted tender doctrine has not been limited to construction contracts involving a named insured and that ***Pekin*** was wrongfully decided. Alternatively, Universal suggests Shelter's interpretation of ***Pekin*** is too broad and the case should only be limited to the particular facts of that case which involved tow truck businesses and is not applicable to this case. Secondly, Universal argues that Baggott and Foley Sweitzer's tender to Shelter was legitimate.

---

[4] The Court notes that this type of coverage is also statutorily mandated for used vehicle dealers. ***See* 625 Ill. Comp. Stat. 5/5-102(b)**.

First, the Court addresses Shelter's argument that the tender of defense to it made by Baggott and Foley Sweitzer was not legitimate. Shelter notes that the tender was made via the Target Tender Letter, which was composed and sent to Shelter only after Shelter filed this declaratory judgment suit. At no other time before did either Baggott or Foley Sweitzer ever express their intent not to use their coverage under the Universal policy. In fact, although both Baggott and Sweitzer stated in their deposition testimony that they did not want Universal to provide a defense and that the defense provided by Shelter was sufficient, they did not take any steps to express their feelings to Shelter before they were contacted by a Universal attorney, who then drafted the Targeted Tender Letter on their behalf. Shelter suggests this Targeted Tender Letter is nothing more than Universal's underhanded attempt to avoid its policy obligations.

While Universal's hands may seem less than clean in this situation, Shelter provides no legal authority to support its argument that the targeted tender was not legitimate or invalid because of Universal's involvement. As Universal points out, both Baggott and Foley Sweitzer signed the Targeted Tender Letter of their own free will. Therefore, absent anything of precedential value stating otherwise, this argument of Shelter's will not suffice to make Baggott and Foley Swietzer's targeted tender inoperable.

Next, as to the issue of whether the targeted tender doctrine is applicable to this case, the Court notes that from its review of applicable Illinois case law, there have been no case opinions issued after ***Pekin*** dealing with targeted tender

and de-selection, which are on-point with the facts in this case. There has been little since the Fourth District's issuance of *Pekin* to guide the Court in its analysis of the issues herein. *Pekin*, clearly has restricted the targeted tender doctrine applied in *Cincinnati* and *John Burns*, while the other appellate courts have yet to do so. As such, "in the absence of prevailing authority from the state's highest court, federal courts ought to give great weight to the holdings of the state's intermediate appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently from the decision of the intermediate appellate court." ***Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002) (citations omitted)**.

The Court agrees with Shelter in that the *Pekin's* rationale is applicable to this case. Similar to *Pekin*, because it does business as a new vehicle dealer, Foley Sweitzer is required by the Illinois Vehicle Code to maintain liability coverage for itself and its employees, as well as any "permitted users." Allowing Baggott and Foley Sweitzer to avoid this statutorily mandated coverage by deselecting Universal and instead solely tendering its defense to Shelter would operate against Illinois public policy. Additionally, as in *Pekin*, this case is distinguishable from the other line of targeted tender cases in Illinois, including both Supreme Court decisions in *Cincinnati* and *John Burns*, because it is not in the context of a construction contract. There were no general contractors and subcontractors. There was no prior contract between the vehicle owner and Baggott or Foley Sweitzer agreeing to

add them as an additional named insured to the vehicle owner's Shelter policy. Thus, there is nothing to indicate any prior contemplation that Baggott (and his employer), being a permissive driver of the vehicle involved in the accident, would be entitled to tender the underlying suit to either his employer's insurance, issued by Universal or the vehicle owner's insurance, issued by Shelter.

This is an important distinction. Both cases relied upon by the Illinois Supreme Court in ***Cincinnati***, when discussing the targeted tender doctrine, involved situations where the tendering insured was listed as an additional named insured on the tendered insurer's policy. **701 N.E.2d at 503 (citing *Institute of London Underwriters v. Hartford Fire Ins. Co.*, 599 N.E.2d 1311, 1313 (Ill. App. Ct. 1992) and *Aetna Casualty & Surety Co. v. Chicago Ins. Co.*, 994 F.2d 1254, 1260 (7th Cir. 1993))**. ***London Underwriters*** was a construction contract case. While ***Aetna*** involved a professional liability policy for a pharmacy and each of its three employed pharmacists, these pharmacists were listed as additional insureds under the policy. ***Aetna***, **994 F.2d at 1256**.

As ***Pekin*** is the most recent Illinois case law on this issue, the Court is required to give the holding great weight, finding no persuasive indications that the Illinois Supreme Court would decide ***Pekin*** otherwise. The automobile industry is highly regulated and statutes mandating liability coverage should not be contravened or manipulated by Illinois common law. Accordingly, the Court finds that Universal had a duty to defend that was triggered upon receipt of the underlying complaint

(both initial and amended) from Foley Sweitzer. Further, because it violates public policy to allow either Baggott or Foley Sweitzer to "deselect" their insurance carrier in favor of tendering their defense in the underlying suit to Shelter, the Court finds Universal's duty to defend Baggott and Foley Sweitzer was not dissolved via the Targeted Tender Letter.

As such, the Court grants Shelter's Cross Motion for Summary Judgment (Doc. 24). In so doing, the Court finds that Universal and Shelter are both "co-primary" insurers[5] as to the underlying suit, whereby Universal is required to contribute (and reimburse for attorneys' fees and costs already expended by Shelter) on a *pro rata* basis for the defense of Baggott and Foley Sweitzer. Additionally, as the Targeted Tender Letter clearly indicated, and neither party contends, that Baggott and Foley Sweitzer did not intend to deselect Universal when it came to their duty to indemnify, Shelter requests that Universal be made to share with it on a *pro rata* basis any indemnification of Baggott and Foley Sweitzer. Because liability has not been determined in the underlying suit, the Court finds that the allocation of indemnification coverage is not yet ripe for determination.

---

[5] The Court notes that in **Pekin**, the insurer for the delivery van owner was held to be a secondary and excess insurer, whereas the towing truck company's insurer was held to be primary. In this case, Shelter seeks a declaration that both it and Universal be considered "co-primary" insurers for the purposes of the duty to defend and the duty to indemnify in the underlying suit instead of secondary, and so there is no need for the Court to further examine primary versus secondary coverage.

## IV. CONCLUSION

For the reasons discussed in this Order, the Court hereby **DENIES** the Motions for Oral Argument (Docs. 25 & 33). The Court also **DENIES** Universal's Motion for Summary Judgment (Doc. 22) and **GRANTS** Shelter's Cross Motion for Summary Judgment (Doc. 26). As such, the Court finds Universal's duty to defend was not dissolved via the Target Tender Letter. The Court further finds that Universal and Shelter are both "co-primary" insurers as to the underlying suit, whereby Universal is required to contribute (and reimburse for attorneys' fees and costs already expended by Shelter) on a *pro rata* basis for the defense of Baggott and Foley Sweitzer. As to the issue of the duty to indemnify, because liability has not yet been determined in the underlying suit, the issue is not yet ripe for determination. As such, the Court must **DISMISS** this declaratory judgment suit **WITHOUT PREJUDICE**, leaving open the possibility of resolving the indemnity issue later, when the underlying suit has resolved. ***See Travelers Ins. Companies v. Penda Corp., 974 F.2d 823, 833-34 (7th Cir. 1992)***.

**IT IS SO ORDERED.**

Signed this 30th day of September, 2008.

/s/  *David R Herndon*
**Chief Judge**
**United States District Court**